SKAPIK LAW GROUP
Mark J. Skapik (SBN 164957)
Geralyn L. Skapik (SBN 145055)
Blair J. Berkley (SBN 222293)
Matthew T. Falkenstein (SBN 333302)
5861 Pine Avenue, Suite A-1
Chino Hills, California 91709
Telephone:  (909) 398-4404
Facsimile:   (909) 398-1883
mskapik@skapiklaw.com, gskapik@skapiklaw.com
bberkley@skapiklaw.com, mfalkenstein@skapiklaw.com

Attorneys for Plaintiffs FELIX ESPINOZA and
ALYSSA J. GIBSON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| FELIX ESPINOZA, an individual and successor-in-interest to SIERRA ROSE VANATTA; ALYSSA J. GIBSON, an individual; and DOES 1 through 10,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF ORANGE; ANTHONY MAGDELENA, an individual; SHERIFF DON BARNES, an individual; CHAD TAYLOR, an individual; and Does 1 through 10,<br><br>Defendants. | Case No. 8:24-cv-02120-AH (DFMx)<br><br>[Assigned to Hon. Anne Hwang]<br><br>[Assigned to Hon. Douglas F. McCormick, Magistrate Judge]<br><br>**JOINT REPORT UNDER FEDERAL RULE OF CIVIL PROCEDURE 26(f)** |

Pursuant to Federal Rule of Civil Procedure 26(f), Plaintiff FELIX ESPINOZA, an individual and successor-in-interest to SIERRA ROSE VANATTA; ("Plaintiff") and Defendants COUNTY OF ORANGE; and ANTHONY MAGDELENA, an individual; (collectively "Defendants"), respectfully submit the following joint report, which was prepared following a conference between counsel for the parties on July 18, 2025.

## A. STATEMENT OF THE CASE

### i. Plaintiff's Statement

Sierra Rose Vanatta was a 23-year-old woman with a history of hypertensive heart disease and a rare blood disorder that required regular blood transfusions to survive. In early 2023, she was admitted to Hoag Hospital's Intensive Care Unit in critical condition. Her treating physicians concluded that she required urgent and ongoing hospital care and explicitly warned her that any premature discharge would place her life at immediate risk. Despite these clear medical warnings, Ms. Vanatta was forcibly removed from the hospital against medical advice by her probation officer, Defendant Anthony Magdaleno, and transported to the Orange County Women's Central Jail.

Upon arrival at the jail, Ms. Vanatta was not housed in a medical unit, nor was she medically cleared for incarceration. Jail medical staff and deputies failed to conduct a thorough evaluation of her life threatening condition. Ms. Vanatta was instead placed into general population, where she was denied essential medication, blood transfusions, monitoring, and even basic hydration. Over the next several days, she visibly deteriorated. She experienced weakness, collapsed multiple times, vomited blood, and was unable to walk unassisted. Family members who attempted to advocate for her medical care were ignored or turned away.

Despite numerous signs of acute distress, no meaningful action was taken by jail staff or medical personnel. Jail officials failed to transfer Ms. Vanatta back to the hospital or escalate her care, even as her condition became dire. She developed sepsis and died in a regular-housing unit on January 5, 2024.

Plaintiffs allege that Defendant Magdaleno knowingly acted with deliberate indifference in removing Ms. Vanatta from hospital care and placing her into a facility that was not equipped to address her urgent medical needs. Plaintiffs further allege that the County of Orange maintained unlawful policies, customs, and practices that failed to protect seriously ill detainees, including inadequate intake screening, poor medical

- 2 -
JOINT REPORT UNDER FEDERAL RULE OF CIVIL PROCEDURE 26(f)

supervision, deficient emergency response procedures, and failures in staff training and accountability.

In addition to Defendant Magdaleno, Plaintiffs assert claims against Doe Defendants representing medical providers, jail deputies, supervisors, and policymakers who either directly participated in or allowed the conditions that caused Ms. Vanatta's death. These individuals ignored visible signs of medical crisis and violated their legal obligations by failing to summon care, failing to conduct proper safety checks, failure to properly classify, refer her for evaluation, or intervene as her health declined.

### ii. **Defendants' Statement**

Decedent Sierra Vanatta ("Decedent") lived a challenged life marred with drug use, homelessness, arrests, and lengthy stints on probation. Even while on probation, Decedent frequently tested positive for drugs such as methamphetamine and fentanyl, and otherwise violated the terms of her mandatory supervision. On November 29, 2023, a compliance check was conducted by Orange County Deputy Probation Officer Anthony Magdaleno ("DPO Magdaleno") with the assistance of the Westminster Police Department. In the course of that check, Decedent admitted to using fentanyl—yet another violation of her probation. She was arrested and transported to the Westminster Police Department jail for processing. She was then transported by Westminster PD to the Orange County Intake Release Center and booked shortly after midnight on November 30, 2023. The last time DPO Magdaleno ever saw, spoke to, or interacted with Decedent was at the Westminster Police Department, prior to Decedent's transport to the Intake Release Center.

On December 4, 2023, while Decedent was in custody, a hearing went forward in her pending felony case, Orange County Superior Court Case No. 21HF0023. She was sentenced to 120 days in custody.

Decedent remained in custody from November 30, 2023 until December 29, 2023, where she was routinely seen and provided treatment by nursing and medical staff within the Orange County Jail. On December 29, 2023, Decedent was transported to

Anaheim Global Medical Center ("AGMC") following complaints of "weakness." On December 30, 2023, Decedent signed herself out of AGMC against medical advice. She returned to the jail that same day and was re-housed in the jail's female medical housing unit. She denied any symptoms but was nonetheless scheduled for daily treatment. Unfortunately, Decedent routinely refused help. Records confirm that on December 31, 2023, and January 1, 2, 3, and 4, 2024, Decedent refused to be seen by jail medical staff.

On January 4, 2024, medical staff determined Decedent should be sent to the hospital. She was transported to Orange County Global Medical Center where she passed away during the early morning of January 5, 2024.

The facts outlined here put Plaintiff's version of events in sharp relief. Decedent was never hospitalized at "Hoag Hospital" at any point when she was under the supervision of DPO Magdaleno. Nor did DPO Magdaleno ever remove her from any medical institution. Decedent was also never released from custody after being arrested on November 29, 2023. Rather, she remained in custody and was consistently provided medical care (care that she likely would not have sought on her own or received had she been out of custody) from the time of arrest until the time of her death. When an elevated level of care was provided to her at AGMC, Decedent made the self-destructive choice to end it and remove herself from hospitalization against medical advice. She then put her own health in jeopardy by consciously refusing care.

While certainly tragic, fault for Decedent's demise does not lie with DPO Magdaleno or any County employee. Accordingly, Defendants forcefully deny Plaintiff's allegations and deny that Decedent or Plaintiff suffered any compensable damages or loss in any sum, or at all.

**B. SUBJECT MATTER JURISDICTION**

This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 as Plaintiff asserts claims arising under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983 for violations of the Fourteenth Amendment (including deliberate indifference to serious medical needs and interference with familial association). The

Court also has jurisdiction over Plaintiffs' claims for attorneys' fees and costs under 42 U.S.C. § 1988.

Defendants acknowledge that this Court has subject matter jurisdiction under 28 U.S.C. § 1331 specific to Plaintiff's claims for relief asserted pursuant to 42 U.S.C. § 1983. Defendants deny any inference or implication that the Court will retain jurisdiction on the same stated grounds throughout the entirety of this action.

### C. LEGAL ISSUES

#### i. Plaintiff

Based on current information, the key legal and factual issues in this case are:

1. Whether Defendants, including Probation Officer Magdaleno and County jail and medical personnel, acted with deliberate indifference to Ms. Vanatta's serious medical needs in violation of her Fourteenth Amendment rights under 42 U.S.C. § 1983.
2. Whether Defendants, including County jail and medical personnel, failed to conduct timely safety checks in violation of Ms. Vanatta's Fourteenth Amendment rights under 42 U.S.C. § 1983.
3. Whether Defendants, including County jail and medical personnel, caused a state created danger violation of Ms. Vanatta's Fourteenth Amendment rights under 42 U.S.C. § 1983.
4. Whether Defendants, including County jail and medical personnel, failed to properly classify, in violation of Ms. Vanatta's Fourteenth Amendment rights under 42 U.S.C. § 1983.
5. Whether Defendants failed to summon immediate and necessary medical attention despite knowing or having reason to know that Ms. Vanatta required urgent care, in violation of California Government Code § 845.6.
6. Whether the County of Orange maintained unconstitutional customs, practices, or policies, including inadequate intake procedures, deficient medical care protocols,

JOINT REPORT UNDER FEDERAL RULE OF CIVIL PROCEDURE 26(f)

and failure to train/supervise jail staff that were the moving force behind the constitutional violations.

7. Whether Doe Supervisor and Policy Maker Defendants were deliberately indifferent to risks posed by known systemic deficiencies and failed to take corrective action despite actual or constructive notice.

8. Whether Defendant Magdaleno's actions in removing Ms. Vanatta from hospital care and placing her in an unsafe custodial environment affirmatively placed her in greater danger, triggering constitutional liability under the state-created danger doctrine.

9. Whether Defendants' conduct unlawfully interfered with Plaintiffs' substantive due process rights to maintain a familial relationship with Ms. Vanatta.

10. Whether Defendants violated Ms. Vanatta's and Plaintiffs' constitutional rights by means of coercion, intimidation, or threats, thus triggering liability under California's Bane Act.

11. Whether Defendants' negligent, reckless, or deliberately indifferent conduct directly and proximately caused the death of Ms. Vanatta, thereby supporting Plaintiffs' claim for **wrongful death** under California law.

12. Whether any individual Defendants are entitled to qualified immunity as a matter of law.

    ii. **Defendants**

1. Whether any individual Defendants are entitled to qualified immunity for any of Plaintiff's federal claims pursued under 42 U.S.C. § 1983;

2. Whether Plaintiff had a legally sufficient "familial relationship" with Decedent to warrant damages under the Fourteenth Amendment's substantive due process clause;

3. Whether any Defendant is entitled to immunity under California state law on any of Plaintiff's state law tort claims;

4. The nature and extent of the injuries to Decedent proximately caused by any County employee;
5. The nature and extent of the injuries to Plaintiff proximately caused by any County employee;
6. Decedent's comparative fault;
7. The nature and extent of Decedent's damages; and
8. The nature and extent of Plaintiff's damages.

**D. PARTIES AND EVIDENCE**

<u>Parties</u>

Felix Espinoza, County of Orange, Anthony Magdaleno.

<u>Witnesses:</u>

Nancy Martin, Dr. Whitney Lucas, and other witnesses; Hoag Hospital medical staff, Jail medical staff, Correctional deputies, OC Women's Jail staff, Transportation officers, Orange County policymakers and administrative staff, Classification therapists, and Co-inmates witnesses; Anaheim Global Medical Center medical staff, Orange County Global Medical Center medical staff, Decedent's prior boyfriends Andrew Flour and Kyle Birkinshaw, Decedent's sister Alyssa Gibson, Orange County Deputy Probation Officer Jeffrey Housel, forensic pathologist who performed Decedent's autopsy.

<u>Evidence:</u>

- Plaintiff's Medical Records
- Plaintiff's Jail Records, including jail medical records
- Testimony from Inmates
- Incident/Police Report of the Incident
- Autopsy Report
- Booking and Classification Records
- Transportation Records
- Orange County Policies and Procedures

- Medical Expert Reports
- Any Video Footage of the Incident
- Any Audio Recordings of the Incident
- Decedent's Probation File
- Decedent's criminal case records from Orange County Superior Court
- Documents related to Plaintiff's relationship with Decedent

Based on defense counsel's experience, the Orange County District Attorney's Office is investigating this in-custody death, consistent with a Memorandum of Understanding that provides for the OCDA to investigate all in-custody deaths in Orange County. Typically, the OCDA interviews witnesses, gathers documents, collects physical evidence, and then prepares a comprehensive investigative summary outlining its methodology and its conclusions. These investigative summaries are usually posted on the OCDA's public website: https://orangecountyda.org/reports/custodial-death-reports. That posting usually signals that the investigation is complete. As of the date of this submission, there is no posting specific to Decedent's death, which signals to defense counsel that the investigation is not complete. Defense counsel expects that once the OCDA's investigation is complete (but not before), the investigative materials collected by the OCDA (or at least portions of them) will be available for discovery in this case.

Defendants contend that a protective order may be appropriate in this case to help facilitate the disclosure of sensitive materials in discovery, such as jail surveillance video (where other inmates with third-party privacy interests may be shown). Defense counsel is presently preparing a draft protective order for Plaintiff's counsel's review so that the parties may submit a stipulated protective order to the magistrate.

**E. DAMAGES**

    **i. Plaintiffs**

Plaintiff seeks damages in an amount according to proof and which is fair, just, and reasonable, including general and special damages, pain and mental anguish,

survival damages, punitive damages, costs, interest, attorneys' fees, and such other relief, according to proof, that this Court deems appropriate and lawful.

### ii. **Defendants**

Defendants deny Plaintiff and Decedent were injured or damaged in any amount or sum, or at all, by reason of any act or omission of Defendants, and therefore deny Plaintiff is entitled to any of the relief requested, in any capacity.

### F. INSURANCE

Plaintiff does not hold any applicable insurance.

The County of Orange is self-insured pursuant to the California Government Code.  See, California Government Code § 990 et seq.

### G. MOTIONS

#### i. **Plaintiffs'**

##### a. Procedural Motions

Plaintiff reserves the right to bring a motion for summary judgment on the issue of Defendants' liability or qualified immunity should the evidence discovered support such a motion. Otherwise, Plaintiff may seek to amend the complaint to add new parties or causes of action should facts supporting amendment be discovered during discovery. Currently, Plaintiff has not discovered the names of any of the jail custody deputies and jail medical professionals responsible for Ms. Vanatta. Plaintiff also reserves the right to bring motions in limine in advance of trial pursuant to this Court's orders on the same.

##### b. Dispositive Motions

Plaintiff reserves the right to bring a motion for summary judgment on the issue of Defendants' liability or on qualified immunity should the evidence discovered support such a motion.

#### ii. **Defendants**

##### a. Procedural Motions

In the event Plaintiff is granted leave to amend the complaint, and depending on the scope of any amendment, Defendants may challenge the sufficiency of allegations under Rule 12 against any new parties.

### b. Dispositive Motions

Defendant County believes Plaintiff's lone remaining Monell claim can be disposed of on summary judgment. Defendant Magdaleno and any later-added individual defendants (if allowed) will challenge Plaintiff's federal claims by way of summary judgment applying the doctrine of qualified immunity. Defendants also believe that application of state law immunities specific to Plaintiff's state law claims may be determined by motion for summary judgment.

Defendants intend to file motions *in limine* at the time of trial as dictated by Plaintiff's case presentation during the pre-trial phase. If Plaintiff's Monell claim survives to trial, Defendants would likely seek bifurcation of that claim.

## H. MANUAL FOR COMPLEX LITIGATION

The parties do not believe that the manual for complex litigation is necessary in this matter.

## I. DISCOVERY

### a. Status of Discovery

No substantive discovery has been conducted as of the filing of this report.

### b. Discovery Plan

Plaintiffs anticipate deposing key individuals involved in the care, custody, and supervision of Sierra Rose Vanatta, including Defendant Anthony Magdaleno, jail correctional officers, medical staff, supervisors, Orange County Health Care Agency staff, probation department officials (including Nancy Martin), Westminster Police, and Doe Medical Providers responsible for intake, classification, safety checks, and medical oversight. Plaintiffs also intend to depose Hoag Hospital ICU personnel, EMTs, paramedics, and any other first responders connected to Ms. Vanatta's hospitalization and in-custody deterioration. Given the scope of the incident and number of involved

1  agencies, Plaintiffs request leave to conduct at least fifteen (15) depositions. Discovery
2  will include medical and autopsy records, incident reports, surveillance video, body-
3  worn and dashcam footage, emergency call logs, personnel files, classification and
4  booking records, training materials, and prior complaints involving similar misconduct.
5  Plaintiffs will also serve written discovery, including interrogatories, requests for
6  admission, and document requests. Electronic discovery will encompass data from the
7  jail system, internal communications, reports, metadata, emails, and any other relevant
8  electronically stored information.

9        Defendants will serve written discovery, including interrogatories, requests for
10 admission, and requests for production of documents.  This written discovery will be
11 targeted at Plaintiff and Decedent's employment, educational, criminal, and medical
12 histories; their relationship; their respective health, habits, and lifestyles; Plaintiff and
13 Decedent's alleged damages; Plaintiff's contentions as to what occurred so as to cause
14 injury and/or loss to Decedent and/or Plaintiff; and the facts, witnesses, and documents
15 that support Plaintiff's contentions.  Defendants will also take depositions of Plaintiff,
16 Decedent's family members and/or friends who may have information about Plaintiff's
17 relationship with Decedent and Decedent's health, habits, and lifestyle; Decedent's prior
18 medical providers; AGMC and Orange County Global Medical Center employees who
19 treated Decedent, and the forensic pathologist who performed Decedent's autopsy.
20 Defendants will also serve records subpoenas for documents related to Decedent's
21 employment and health care as prior employers and health care providers are disclosed
22 in discovery.

23       **c.  Discovery Cutoff**

24       The parties ' discovery cut-off date for the completion of fact discovery should be
25 no later than September 17, 2025. Please see the Scheduling Worksheet, attached as
26 Exhibit A.

27       The parties do not believe that any changes in the disclosure under Federal Rule
28 of Civil Procedure 26(a) should be made and do not believe discovery should be

conducted in phases or otherwise limited. The parties do not believe any changes should be made to the limitations on discovery imposed by the federal rules.

### d. Expert Discovery

The parties propose the following deadlines related to expert discovery, or any other dates the Court sees fit:

| | |
|---|---|
| Initial Expert Disclosure: | October 14, 2026 |
| Rebuttal Expert Disclosure: | October 28, 2026 |
| Expert Discovery Cut-off: | November 14, 2026 |

Please see the Scheduling Worksheet attached as Exhibit A.

### J. SETTLEMENT CONFERENCE | ALTERNATIVE DISPUTE RESOLUTION (ADR)

No settlement discussions have occurred as of the filing of this report. If and when the time comes, however, the parties have agreed to use a mediator from the Court's mediation panel.

### K. TRIAL ESTIMATE

Depending on which claims remain at trial and which issues are permitted to go to the jury, the parties estimate a jury trial of 5-7 court days. Plaintiff and Defendants demand a jury trial on all issues triable by jury. Please see the Scheduling Worksheet attached as Exhibit A.

### L. TRIAL COUNSEL

#### i. **Plaintiffs**

Trial Counsel for plaintiff, Felix Espinoza, an individual and successor-in-interest to Sierra Rose Vanatta; Alyssa J. Gibson, an individual, includes Eric C. Morris, Geralyn Skapik and Mark J. Skapik.

#### ii. **Defendants**

S. Frank Harrell, Esq.; Jesse K. Cox, Esq.; and Garros Chan, Esq., Lynberg & Watkins.

### M. MAGISTRATE JUDGE

Plaintiff does not consent to try this case before a magistrate judge.

## N. INDEPENDENT EXPERT OR MASTER

The parties do not believe that an independent expert or master is necessary in this matter.

## O. SCHEDULE WORKSHEET

See Exhibit A attached.

## P. CLASS ACTIONS

This action is not a class action lawsuit.

## Q. PATENT CASES

This action is not a patent case.

## R. OTHER ISSUES

The parties are working on a Protective Order, which will be submitted to the Court in short order.

**SKAPIK LAW GROUP**

DATED: July 23, 2025    By:    */s/ Eric Morris*
GERALYN L. SKAPIK
MARK J. SKAPIK
ERIC C. MORRIS
ROXANNE A. MARKUS
Attorneys for Plaintiffs

**LYNBERG & WATKINS**

DATED: July 23, 2025    By:    */s/ Jesse K. Cox*
JESSE K. COX
Attorneys for Defendants

///

All signatories listed, and on whose behalf the filing is submitted, concur in the filing's content, and have authorized filing.

**SKAPIK LAW GROUP**

DATED: July 23, 2025         By:     */s/ Eric C. Morris*
                                      ERIC C. MORRIS
                                      Attorneys for Plaintiffs